UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ZENOBIA URSERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CV 1781 CDP |
| | ) | |
| KILOLO KIJAKAZI[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Zenobia Ursery brings this action seeking judicial review of the Commissioner's decision denying her applications for disability insurance and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381. Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), provide for judicial review of a final decision of the Commissioner. Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Procedural History**

Plaintiff was born in 1977 and filed her applications on December 27, 2018. (Tr. 10, 166-178.)  She alleges she became disabled beginning October 1, 2018, because of depression, degenerative disc disease, scoliosis, bulging discs, anxiety, high blood pressure, arthritis in face, and other spinal problems.  (Tr. 194.)  Plaintiff previously received benefits starting in 2003, but those benefits were terminated on August 17, 2018, following an investigation.  (Tr. 30, 76, 90, 778-793.)

Plaintiff's applications in this case were initially denied on April 22, 2019. (Tr. 101-5.)  After a hearing before an ALJ on March 5, 2020, the ALJ issued a decision denying benefits on April 1, 2020.  (Tr. 7-24, 28-70.)  On October 21, 2020, the Appeals Council denied plaintiff's request for review.  (Tr. 1.)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. §§ 405(g) and 1383(c)(3).

In this action for judicial review, plaintiff contends that her residual functional capacity (RFC) is not supported by substantial evidence with respect to either her exertional or non-exertional limitations.  She also argues that the ALJ improperly evaluated opinion evidence.  She asks that I reverse the Commissioner's final decision and remand the matter for further evaluation.  For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts (ECF #26-1) only to the extent they are admitted by the Commissioner (ECF #33-2). I find the Commissioner's objections to plaintiff's statement of facts to be supported by the record, so I adopt her version of those disputed facts (ECF #31-1), as well as the additional facts submitted by the Commissioner (ECF #31-2) as they are not contested by plaintiff. Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age,

education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a

five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482

U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity.  If the claimant is working,

disability benefits are denied.  Next, the Commissioner decides whether the

claimant has a "severe" impairment or combination of impairments, meaning that

which significantly limits his ability to do basic work activities.  If the claimant's

impairment(s) is not severe, then she is not disabled.  The Commissioner then

determines whether claimant's impairment(s) meets or equals one of the

impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's

impairment(s) is equivalent to one of the listed impairments, she is conclusively

disabled.  At the fourth step, the Commissioner establishes whether the claimant

can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the

Commissioner evaluates various factors to determine whether the claimant is

capable of performing any other work in the economy.  If not, the claimant is

declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial

evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402

4

U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).

Substantial evidence is less than a preponderance but enough that a reasonable

person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240

F.3d 1145, 1147 (8th Cir. 2001). "[Substantial evidence] means – and means only

– such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal

quotation marks and citations omitted). Determining whether there is substantial

evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th

Cir. 2007).

     I must consider evidence that supports the Commissioner's decision as well

as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to

draw two inconsistent positions and the Commissioner has adopted one of those

positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision

merely because substantial evidence could also support a contrary outcome.

*McNamara*, 590 F.3d at 610.

     When evaluating evidence of pain or other subjective complaints, the ALJ is

never free to ignore the subjective testimony of the claimant, even if it is

uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d

1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's

subjective complaints when they are inconsistent with the record as a whole.  *See*

*e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the

subjective complaints, the ALJ is required to consider whether a claimant's

subjective complaints are consistent with the medical evidence.  *See Polaski v.*

*Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily

activities, the duration, frequency, and intensity of the pain, precipitating and

aggravating factors, dosage, effectiveness and side effects of medication, and

functional restrictions).[2]  When an ALJ gives good reasons for the findings, the

court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696

(8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full

and fair record in the non-adversarial administrative proceeding.  *Hildebrand v.*

*Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

---

[2] This was once referred to as a credibility determination, but the agency has now eliminated use
of the term "credibility" to clarify that subjective symptom evaluation is not an examination of
an individual's character.  However, the analysis remains largely the same, so the Court's use of
the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the
intensity, persistence, and limiting effects of symptoms are consistent with the objective medical
evidence and other evidence of record."  *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25,
2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6
(8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive
analysis to be applied" when evaluating a claimant's subjective complaints).

B.   ALJ's Decision

In her written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 1, 2018.  (Tr. 12.)  The ALJ found that plaintiff had the following severe impairments: depression, anxiety, and degenerative disc disease.  (Tr. 12.)  The ALJ found plaintiff had the non-severe impairments of gastroesophageal reflux disease, hypertension, allergic rhinitis, and obesity.  (Tr. 12-13.)  The ALJ determined that plaintiff's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13.)  The ALJ found plaintiff to have the residual functional capacity (RFC) to perform light work with the following limitations:

> [S]he should be able to change from standing to sitting approximately twice per hour while remaining on task at the workstation.  She can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights or around moving mechanical parts, and she can only occasionally work in vibration. She is able to perform simple, routine and repetitive tasks in a low stress environment, meaning one with minimal changes in settings or duties.  She can occasionally interact with supervisors and coworkers, but should never be assigned to team or tandem tasks, and should work primarily with things, not people.  She should never have to interact with the public as part of her job duties.

(Tr. 15.)  The ALJ relied upon vocational expert testimony to support a conclusion that plaintiff could not perform her past relevant work as an insurance salesperson,

7

but that that there were significant jobs in the economy of photocopy machine operator, price marker, and routing clerk that plaintiff could perform.  (Tr. 19.) The ALJ therefore found plaintiff not to be disabled.  (Tr. 20.)

Plaintiff claims that her RFC is not supported by substantial evidence and that the ALJ improperly evaluated opinion evidence.

Plaintiff argues that there is no medical support for the exertional limitations in her RFC.  She argues that the ALJ improperly drew inferences from medical records and relied on opinions of non-treating medical consultants to fashion her RFC instead of relying on the opinion on Annya Moody, FNP, or obtaining a medical opinion which addressed how her exertional limitations affected her ability to function in the workplace.

RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations."  20 C.F.R. § 404.1545(a).  The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

On January 29, 2020, treating nurse practitioner Annya Moody completed a physical residual functional capacity questionnaire in connection with plaintiff's applications for benefits.  (Tr. 504-07.)  Ms. Moody opined that plaintiff would

"frequently" experience pain or symptoms severe enough to interfere with the attention and concentration needed for simple work tasks.  (Tr. 505.)  Ms. Moody further determined that plaintiff could walk two city blocks, sit for 30 minutes at a time and about two hours total in an eight-hour day, stand for 30 minutes at a time and stand/walk less than two hours in an eight- hour day.  (Tr. 505.)  She additionally concluded that plaintiff must walk every 30 minutes for six to ten minutes at a time, be able to shift positions at will, and use a cane to stand/walk. (Tr. 505-06.)  Ms. Moody opined that plaintiff could frequently lift less than 10 pounds, occasionally lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds.  (Tr. 506.)  She further determined that plaintiff could frequently turn her head to the right or left and occasionally look up and down and hold her head in a static position.  (Tr. 506.)  Ms. Moody concluded that plaintiff would miss more than four days of work per month due to her impairments.  (Tr. 507.)

The ALJ found that Ms. Moody's opinion was not supported by or consistent with the objective medical evidence and the record as a whole.  (Tr. 18.)  In support of this determination, the ALJ noted that: several records indicated that plaintiff did not have an antalgic gait;[3] plaintiff did not have an

---

[3] At examinations on December 17, 2019, and January 9, 2020 (just 11 days before issuing her opinion) Ms. Moody observed that plaintiff had a normal, not antalgic, gate.  (Tr. 450, 458.)  In addition, plaintiff was observed by the disability investigations unit to walk with a normal, fluid gait and pace to her consultative examination on July 23, 2018.  (Tr. 786-87.)  The consultative examiner also noted that plaintiff demonstrated normal gait.  (Tr. 333-34, 339-40.)

antalgic gait or use a cane at her hearing;[4] and, there was no medical evidence indicating any impairment related to her neck or cervical spine which would support any limitations on plaintiff's ability to turn her head. (Tr. 18.) The ALJ also found no support in the record for Ms. Moody's opinion that plaintiff would be absent from work four or more days per month. (Tr. 18.)

Agency medical consultant Kevin Threlkeld, M.D., opined on April 22, 2019, that plaintiff had no severe physical impairments, concluding that her complaints of pain were not supported by her normal examinations or objective testing. (Tr. 90-91.) The ALJ found the opinion was not persuasive based upon additional medical evidence received at the hearing, which demonstrated that plaintiff had degenerative disc disease. (Tr. 17.) According to plaintiff, because the ALJ did not accept either medical source's opinion with respect to her physical limitations, "there is no medical support for the ALJ's physical portion of the RFC."

Plaintiff incorrectly argues that the ALJ's RFC is not supported by substantial evidence unless there is a medical opinion which addresses her

_____

[4] On April 16, 2019, agency medical consultant Steven Akeson, Psy.D., concluded that plaintiff had credibility issues in part because she claimed that she walked with a cane prescribed to her, but she never attended any doctor's appointments using a cane. (Tr. 79.)

specific functional limitations.  Although the RFC is a medical question and must be supported by some medical evidence, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).   Instead, the RFC must be determined by the ALJ based on all the relevant evidence, which includes her subjective symptoms, her testimony, the medical evidence, and her daily activities.

In this case, after considering all this evidence, the ALJ concluded that plaintiff retained the capacity to perform light work, with significant modifications tailored to her credible limitations.  In so doing, she did not substantially err.  The ALJ properly evaluated the medical evidence using the new regulations applicable to plaintiff's claim.  *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.").  "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted); *See* 20 C.F.R. § 416.920b(c)(1)-(3) (2017) (statements on issues reserved to the Commissioner, such as statements that a claimant is or is not

disabled, are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.").

While the ALJ does have a duty to fully and fairly develop the record, the ALJ is not required to obtain additional medical evidence if the evidence of record provides a sufficient basis for the ALJ's decision. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011). Here, the substantial evidence on the record as a whole supports the ALJ's RFC determination and no additional consultative examinations were required.

With respect to her exertional limitations, the ALJ properly relied on the objective medical evidence of record regarding plaintiff's back pain, which she specifically considered and factored into her evaluation of plaintiff's RFC. To account for plaintiff's credible limitations with respect to her back, the ALJ limited plaintiff to light exertional work which provided her with a workstation sit to stand option twice per hour and did not require her to climb ladders, ropes, and scaffolds, or work at unprotected heights or around moving machinery and only occasionally required her to balance, stoop, kneel, crouch and crawl. These limitations are consistent with her conservative treatment and numerous relatively normal examinations and test results.

In formulating plaintiff's RFC, the ALJ properly considered that plaintiff received conservative treatment for her back pain, which included chiropractic

12

manipulation, physical therapy, muscle relaxers, heat, ketorolac and steroid injections, gabapentin, Tylenol, Aleve, and ibuprofen. (Tr. 321, 325, 342, 348, 374, 392-410, 424-26, 433-34, 488, 773-74.). *See Milam v. Colvin,* 794 F.3d 978, 985 (8th Cir. 2015) (ALJ may properly consider claimant's conservative treatment history for back pain, which included exercises and medication, when fashioning RFC).

The ALJ also properly considered objective medical evidence, including imaging and physical examination findings. (Tr. 16-17.) At a consultative examination on July 23, 2018, plaintiff had some tenderness in her lower back, but she demonstrated normal gait, normal reflexes, intact sensation, and full muscle strength throughout. (Tr. 333-34, 339-40.) She exhibited normal range of motion throughout with the exception of reduced ranges in her hips, knees, and lumbar spine. (Tr. 339-40.) Plaintiff had a positive straight leg raise test in the supine position and a negative straight leg raise test in the seated position. (Tr. 339.) X-rays of her thoracic and lumbar spine were negative. (Tr. 336-37.) To attend this examination, plaintiff was observed walking to her mother's car without assistance while carrying multiple items and talking on a cell phone. (Tr. 786.) She had a

normal, fluid gait and pace and entered and exited the car without difficulty or assistance.[5]  (Tr. 786-87.)

At an examination by a pain management specialist in September 2018, plaintiff had mildly reduced range of motion in her lumbar spine and tenderness in her paraspinal muscles, but she demonstrated normal strength, sensation, and reflexes (Tr. 345.)  X-rays of her lumbar spine were unremarkable.  (Tr. 349.)

During a January 22, 2019 examination by Ms. Moody, with the exception of an antalgic gait, plaintiff had a normal physical examination including negative straight leg raise tests, the ability to stand on her toes and heels, normal balance, and normal reflexes.  (Tr. 364.)  She reported smoking daily, alcohol and marijuana use, and poor exercise habits.  (Tr. 362-65.)  She was advised to quit smoking, exercise, and lose weight.  (Tr. 365.)

Plaintiff went to the emergency room on March 15, 2019 for a urinary tract infection.  (Tr. 386.)  She reported diffuse low back pain but her examination was otherwise normal, with no sensory deficits. (Tr. 385-86).  She was noted to be in no distress.  (Tr. 385.)  Plaintiff reported smoking daily, along with alcohol and marijuana use.  (Tr. 385.)

---

[5] Investigators of the disability investigations unit surveilled and videotaped plaintiff on her way to her consultative examination, then spoke to her afterwards.  (Tr. 786-788.)  Plaintiff told investigators that she had difficulty walking and getting in and out of the car and needed assistance from her mother.  (Tr. 788.)

During her visit to the pain management clinic on April 15, 2019, plaintiff rated her pain as 9/10 but her examination yielded mostly normal results, with intact sensation and only slightly reduced (4-5/5) strength in her lower extremities, increased lumbar paraspinal pain with extension and flexion, and mild tenderness over her sacroiliac joints. (Tr. 374.)  Plaintiff reported improvement with cortisone injections and a "fair" response to chiropractic care.  (Tr. 374.)  She was taking Tylenol, Aleve, and Ibuprofen.  (Tr. 374.)  She was advised to start physical therapy.  (Tr. 374.)

An MRI of plaintiff's lumbar spine taken on May 31, 2019, revealed multi-level degenerative disc and joint disease with mild to moderate findings at L4-L5 and L5-S1. (Tr. 417-18, 771-72.)

Plaintiff received a median branch block and facet joint injections on July 18, 2019 and August 15, 2019, and attended physical therapy sessions from June through August of 2019, at the end of which she reported feeling "20 % better overall." (Tr. 773-776, 392-411.)  Her spinal range of motion as of July 11, 2019, was 90% extension, with full range of motion in flexion and side bending.  (Tr. 409.)  She continued to report pain and sitting and standing tolerances of 5-10 minutes.  (Tr. 409.)

Except for an antalgic gait, plaintiff's examinations by Ms. Moody on July 5 and August 26, 2019, were within normal limits as plaintiff had negative straight

leg raise tests, was able to stand on her toes and heels, exhibited normal balance, and was in no acute distress. (Tr. 476, 487.)  Plaintiff continued to report smoking daily, as well as alcohol and marijuana use, and was counseled on quitting smoking and losing weight.  (Tr. 478-79, 487-88.)

Plaintiff's examinations on July 18 and August 15, 2019, were normal, and she demonstrated full range of motion, strength, and sensation.  (Tr. 422-23, 431.)

During examinations on December 17, 2019, and January 9, 2020,  Ms. Moody observed that plaintiff exhibited a normal gait and was in no acute distress. (Tr. 450, 458.)  Plaintiff reported some localized low back pain in December, but her musculoskeletal system was normal on December 17, 2019.  (Tr. 450, 457.) Plaintiff's tobacco, drug, and alcohol use remained unchanged, and she was again counseled to stop smoking and lose weight.  (Tr. 447-50, 458-59.)

After thoroughly summarizing this evidence of plaintiff's conservative treatment and largely normal examinations and objective test results, the ALJ formulated a restricted light work RFC based on plaintiff's credible exertional limitations of record with respect to her back pain.  Although plaintiff believes that the ALJ should have assessed the medical evidence differently to support greater limitations or obtained another medical opinion which addressed how her exertional limitations affected her ability to function in the workplace before fashioning her RFC, it is not my role to reweigh the medical evidence of plaintiff's

16

limitations considered by the ALJ in her determination of plaintiff's RFC. *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016). Under these circumstances, the ALJ did not err in failing to obtain another medical opinion as to plaintiff's exertional limitations before fashioning plaintiff's RFC, and her decision is entitled to deference.

The same is true with respect to the non-exertional limitations in plaintiff's RFC. To account for plaintiff's credible limitations with respect to her depression and anxiety, the ALJ limited plaintiff to simple, routine and repetitive tasks in a low stress environment with minimal changes in setting or duties, only occasional interaction with supervisors and coworkers, and no team tasks or interaction with the public. (Tr. 15.) Plaintiff argues that the ALJ improperly relied on the opinion of agency medical consultant Steven Akeson, Psy.D., when fashioning her RFC. Plaintiff argues that the opinion of a non-examining physician does not constitute substantial evidence and that it was not probative because the opinion was rendered eleven months before the hearing.

On April 16, 2019, Dr. Akeson reviewed plaintiff's medical records and concluded that plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions, work with or around others, interact appropriately with the general public, and accept instructions and respond appropriately to supervisory criticism. (Tr. 78-82.) Dr. Akeson determined that

plaintiff would benefit from a work environment with limited social interaction, and that she could understand, remember, and carry out simple instructions, perform activities within a schedule, maintain regular attendance, be punctual, complete a normal work schedule without interruptions from psychologically based symptoms, and perform at a consistent pace. (Tr. 78-82.) In support of this opinion, he noted that plaintiff was being treated with medication and therapy and had never been hospitalized for her mental impairments. (Tr. 79.) Dr. Akeson believed that plaintiff had embellished the severity of her impairments and stated that her credibility was a concern. (Tr. 79.) With respect to her credibility, Dr. Akeson noted that plaintiff claimed that she walked with a cane prescribed to her, but she never attended any doctor's appointments using a cane. (Tr. 79.)

Plaintiff's treating psychiatrist, Sanjeev Kamat, M.D., completed a mental medical source statement in connection with plaintiff's applications for benefits on February 11, 2020. (Tr. 509-12.) Dr. Kamat opined that plaintiff had marked limitations in the following areas: initiating and completing tasks in a timely manner; ignoring or avoiding distractions; maintaining necessary concentration to perform simple routine tasks; understanding and learning instructions; and, responding appropriately to requests, criticism, suggestions, corrections, and challenges. (Tr. 509-10). Dr. Kamat opined that plaintiff had moderate limitations in the following areas: sustaining an ordinary routine and regular

attendance; following simple oral instructions; making work decisions; working a full day without needing additional rest periods; distinguishing between acceptable and unacceptable work performance; regulating emotions, controlling behavior, and maintaining well-being in a work setting; and, keeping social interactions free of excessive irritability, argumentativeness, sensitivity, or suspiciousness.  (Tr. 509-11.)  He determined that plaintiff's overall pace of production would be 31% or more below average and she would miss work three or more days a month due to psychologically based symptoms.  (Tr. 509-11.)  Dr. Kamat believed that plaintiff could work in a task-oriented setting where contact with coworkers was only casual and infrequent and that she could not consistently perform for supervisors without exhibiting insubordinate behavior.  (Tr. 510-11.)  However, he believed that plaintiff had no limitations on her ability to interact with the general public.  (Tr. 511.)

Here, the ALJ properly considered the persuasiveness of the medical source evidence under the new regulations by discussing the supportability and consistency of the evidence, the two most important factors required by the new regulations.  *See* 20 C.F.R. § 416.920c(a)-(c) (2017) (in evaluating persuasiveness, ALJ should consider supportability, consistency, relationship with the claimant -- which includes length of the treatment relationship, frequency of examinations, examining relationship,  purpose of the treatment relationship, and the extent of the

treatment relationship,  specialization, and other factors); 20 C.F.R. §

416.920c(b)(2) (2017) (the ALJ was required to explain how he considered the

factors of supportability and consistency, which are the two most important factors

in determining the persuasiveness of a medical source's medical opinion).  The

ALJ was not precluded from relying upon Dr. Akeson's opinion merely because he

was a non-examining consultant.[6]  Plaintiff cites caselaw regarding non-examining

physicians which predates the new regulations, which "require the ALJ to consider

the opinions of state agency medical consultants because they are highly qualified

and experts in Social Security disability evaluation. *See* 20 C.F.R. § 404.1513a.

The ALJ's reasonable reliance on an opinion from a highly qualified expert is

within the zone of choice." *Morton v. Saul*, 2021 WL 307552, at *8 (E.D. Mo.

Jan. 29, 2021).  Nor was the ALJ required to give any special weight to Dr.

Kamat's opinion simply because he was plaintiff's treating doctor.  *See* 20 C.F.R. §

416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the

agency "will not defer or give any specific evidentiary weight, including

_____

[6]Plaintiff also argues that the ALJ should not have relied upon Dr. Akeson's opinion because it
was rendered eleven months before the hearing.  This argument is not persuasive as Dr.
Akeson's opinion was issued after plaintiff's alleged onset date and is therefore relevant
evidence that the ALJ was required to consider.  *See* 20 C.F.R. §§ 404.1513a, 416.913a.
Moreover, the ALJ did not rely solely on Dr. Akeson's findings when formulating plaintiff's
mental RFC.  Instead she considered all relevant evidence of record, including the evidence
which post-dated his opinion.

controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.").

In this case, the ALJ found Dr. Akeson's opinion persuasive as it was consistent with the other medical evidence of record and plaintiff's activities, which the ALJ had previously discussed in detail and referenced in her opinion.

In contrast, the ALJ found Dr. Kamat's opinion not persuasive the record as inconsistent with, and not supported by, the record as a whole.  The ALJ noted that, despite Dr. Kamat's opinion regarding the severity of plaintiff's impairments, plaintiff testified that she was able to earn two college degrees during the last couple of years, which is inconsistent with his finding that she had marked limitations in her ability to understand, remember, and apply information.  (Tr. 18.)  Moreover, the ALJ determined that Dr. Kamat's opinion was not persuasive because he provided it on a form which did not provide an option for selecting a "mild" ( as opposed to "moderate," "marked," or "no") limitation in any area of functioning.  (Tr. 18.)

"Most importantly," the ALJ concluded that Dr. Kamat's opinion was not persuasive as it was not supported by his own treatment notes.  (Tr. 18.)  From January 8, 2019, through August 30, 2019, plaintiff received psychiatric care from Dr. Kamat on seven occasions.  (Tr. 528-34.)  Mental status examinations at each appointment revealed fair to good insight and judgment, logical and linear

thinking, good eye contact, normal speech, increasingly normal mood and full affect, no delusions, no hallucinations, no paranoia, and no phobias.  (Tr. 528-34.)  She was oriented to time, place, and person and her psychomotor activity was within normal limits.  (Tr. 528-34.)  Plaintiff was cooperative and exhibited no agitation or hostility during the examinations.  (Tr. 528-34.)  On May 29, 2019, Dr. Kamat noted that plaintiff "said she feels less sad and less depressed now [and] said she sleeps better now at night with the [A]mbien medications. [S]he does not hear any voices at all, said she does not feel too anxious now." (Tr. 530.)  On August 30, 2019, Dr. Kamat wrote that plaintiff "feels sad at times but not too much, said she hears no voices now, she sleeps okay at night, she does not feel anxious much now, she has no paranoid thoughts present."  (Tr. 528.)  Dr. Kamat's notes contain no mention of distractibility or poor memory, nor do they reveal any significant clinical or diagnostic abnormalities consistent with marked limitations.  (Tr. 528-34.)  Instead, Dr. Kamat's notes reflect that plaintiff steadily improved with treatment.  (Tr. 528-34.)

Dr. Kamat's opinion was also inconsistent with the medical records from other medical sources, who noted that plaintiff was alert and cooperative and in no distress during appointments.[7]  (Tr. 385-86, 422, 431, 449, 458, 476, 487.)

---

[7] The ALJ specifically noted the exception was plaintiff's attitude during her July 23, 2018, consultative examination, at which she appeared upset and hostile.  (Tr. 333.)  Plaintiff also appeared hostile during her administrative hearing, and when questioned by the ALJ plaintiff

Although plaintiff believes that the ALJ should have assessed the medical opinion differently to support greater limitations, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in her determination of plaintiff's RFC. *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016). It is the duty of the ALJ to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Here, the ALJ did not substantially err when she found Dr. Kamat's opinion not persuasive and not consistent with, or supported by, the evidence as a whole. That evidence showed that plaintiff's mental impairments were not disabling. After reviewing the medical evidence as a whole, the ALJ determined that it did not support the disabling limitations claimed by Dr. Kamat and instead supported an RFC more consistent with Dr. Akeson's opinion, which limited plaintiff to simple, routine work in a low stress environment with extremely limited interaction with others. Such a determination does not constitute reversible error as the new regulations permit the ALJ to consider medical source evidence as appropriate. 20 C.F.R. § 416.920a(b)(1) (2017). Ultimately, "the interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v.*

---

stated that she was angry because she had been "cut off" of disability after 20 years following an investigation. (Tr. 44.) The ALJ concluded that plaintiff had a moderate limitation in interacting with others, in part due to her anger issues, and to account for this limitation the ALJ limited her interaction with others and restricted her to a low stress environment. (Tr. 15.)

*Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citing *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005)).

In addition to evaluating the medical evidence, the ALJ formulated plaintiff's RFC after consideration of the entire record, which included an evaluation of plaintiff's subjective symptoms, her testimony, and her daily activities.  When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.  20 C.F.R. § 404.1529(c); SSR 16-3p. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  .  *Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001).  I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence."  *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322.  "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the

plaintiff's complaints . . . and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).  It is not enough that the record contains inconsistencies.  Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence.  *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.  *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ summarized plaintiff's testimony regarding her daily activities and subjective allegations of her limitations and found plaintiff's statements about the intensity, persistence, and limiting effects of her impairments not entirely consistent with the evidence of record.  The ALJ acknowledged plaintiff's reported symptoms and went on to weigh these allegations against the evidence of record as required by 20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ determined that plaintiff's subjective allegations with respect to her non-exertional limitations were not entirely consistent with her routine mental health treatment, consisting primarily of regular doctor's appointments, therapy, and medication.  (Tr. 16-17.)  *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (noting that in evaluating the claimant's subjective

complaints, the ALJ properly considered the claimant's pattern of conservative treatment) (citing *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)). The ALJ also properly considered plaintiff's treatment notes and objective findings.   Plaintiff's treatment notes indicated an ability to provide information about health, follow medical directives, and comply with treatment.  (Tr. 528-34.) The notes also indicated a good rapport and good interactions with providers and medical staff, and she was described as cooperative and appeared comfortable during appointments.  (Tr. 385, 422, 431, 449, 458, 476, 487, 528-34.)  Objective examination findings revealed fair to good insight and judgment, logical and linear thinking, good eye contact, normal speech, increasingly normal mood and affect, no delusions, no hallucinations, no paranoia, and no phobias, and in mental status examinations with her psychiatrist, she exhibited no agitation or hostility.  (Tr. 386, 528-34.)  The ALJ also relied on the fact that the treatment notes made no mention of memory problems, distractibility or flight of ideas, or testing to assess concentration and attention.  (Tr. 528-34.)  The medical records contain no evidence of hospitalizations for mental impairments.  If a claimant's pain is controlled by treatment or medication, it is not considered disabling.  *See Cypress v. Colvin,* 807 F.3d 948, 951 (8th Cir. 2015).

The ALJ reached the same conclusion with respect to plaintiff's complaints of pain relative to her physical impairments.  As discussed above, the ALJ properly

considered objective medical evidence, including imaging and physical examinations, which indicated largely normal results. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints).   The ALJ also noted that plaintiff reported feeling "20 % better overall" after just a couple months of physical therapy.  (Tr. 773-776, 392-411.)  Plaintiff's improvement with conservative treatment is inconsistent with disabling impairments.  *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (ALJ's conclusions as to the severity of pain and limitations consistent with fact that claimant was prescribed generally conservative treatment).

In weighing the evidence, the ALJ also considered the fact that plaintiff claimed to have a prescription for a cane, but she appeared at the hearing and doctor's appointments without one and was observed at the hearing and in other situations not to walk with an antalgic gait.  *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (ALJ properly discounted claimant's subjective complaints of pain, in part because claimant alleged that she needed a cane but had no medical records demonstrating a cane was medically necessary).

In assessing plaintiff's RFC, the ALJ appropriately considered her activities of daily living and her own reported abilities.  (Tr. 13-14.)  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  With respect to her physical limitations,

27

plaintiff reported she could not stand long, could not sit longer than five minutes, had a fear of falling, had chronic back and knee pain, had "stress seizures," and did not drive.  (Tr. 38-39, 69, 231.)  She claimed that her impairments affected her ability to walk further than a block, climb stairs, squat, bend, kneel, lift more than her phone, reach, and see, and that she used a cane that was prescribed two years prior.  (Tr. 39, 41, 236-37.)  With respect to her mental impairments, plaintiff reported she had difficulty remembering, taking medications without reminders, driving, concentrating, handling stress and change, sleeping, dressing, bathing, managing her mood, engaging in social activities, getting along with others, dealing appropriately with authority, and spending time in crowds.  (Tr. 232-37.)  She also stated she was easily angered and had anxiety attacks two to three times a week.  (Tr. 40, 43.)

In weighing plaintiff's credibility, the ALJ recognized that plaintiff had received assistance with personal care since October 1, 2018, but she concluded that plaintiff's daily activities were not entirely consistent with her testimony and claimed limitations, given that she lived with others and could manage funds, take public transportation, shop in stores, read, understand, use the internet, follow instructions, watch television all day, complete tasks, handle her own medical care, and generally handle self-care and personal hygiene.  (Tr. 50-52, 231-40.)  Plaintiff also earned two college degrees online in the prior four years in business

management and human services.  (Tr. 50-52.)  Plaintiff was also observed to walk

with a normal, fluid gait and pace without assistance while carrying multiple items

and talking on a cell phone, and then enter and exit a car without difficulty or

assistance while claiming otherwise to investigators.  (Tr. 786-87.)  "The

inconsistency between [plaintiff's] subjective complaints and evidence regarding

[her] activities of daily living also raised legitimate concerns about [her]

credibility."  *Vance v. Berryhill*, 860 F.3d 1114,1121 (8th Cir. 2017).  Because the

ALJ's reasons for not fully crediting plaintiff's subjective complaints are supported

by the record, I will defer to her judgment.  *See Hogan v. Apfel*, 239 F.3d 958, 962

(8th Cir. 2001).  Credibility determinations, when adequately explained and

supported, are for the ALJ to make.  *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir.

2000).

In this case, the ALJ evaluated all of the evidence of record and adequately

explained her reasons for the weight given this evidence in a manner consistent

with the new regulations.  Good reasons and substantial evidence in the record as a

whole support the ALJ's RFC determination, so I will affirm the decision of the

Commissioner as within a "reasonable zone of choice."  *Fentress v. Berryhill*, 854

F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th

Cir. 2008)).

Finally, plaintiff argues that the ALJ did not sufficiently explain how she weighed the opinion evidence.  I have already discussed this evidence above and concluded that the ALJ properly considered it as required by the new regulations. Plaintiff complains that the ALJ refers to or incorporates evidence previously discussed instead of restating it in her evaluation of the supportability and consistency of opinion evidence.  But mere deficiency in opinion writing is not a sufficient reason to set aside an ALJ's finding.  *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021).  Here, the ALJ's RFC, including her discussion of opinion evidence, is supported by substantial evidence and explained in adequate detail. Because substantial evidence on the record as a whole supports the ALJ's RFC determination, the decision of the Commissioner must be affirmed.

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).  "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion."  *Id.*  Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case

differently.  *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed.  *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Zenobia Ursery's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of September, 2022.